IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NICHOLAS J. HOGAN**,

Case No. 6:15-cv-00315-CL

Plaintiff,

**REPORT AND**

v.                                                      **RECOMMENDATION**

**COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION**,

Defendant.

MARK D. CLARKE, Magistrate Judge.

Plaintiff Nicholas J. Hogan ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application for

Supplement Security Income ("SSI") under Title XVI of the Social Security Act. This court has

jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is not

Page 1 - REPORT & RECOMMENDATION

supported by substantial evidence, that decision should be reversed and this matter should be remanded for the calculation and payment of benefits.

## BACKGROUND

Plaintiff was born on February 20, 1983, and was 15 years old on the January 8, 1998 alleged onset date of disability. Tr. 284. He completed two years of unaccredited college credits. Tr. 395. He has no past relevant work.

Plaintiff protectively filed an application for disability insurance on May 29, 2012, alleging disability due to "eminent grand mal epileptic seizures." Tr. 395. The Commissioner denied his application initially and upon reconsideration. Tr. 140-54. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 4, 2014. Tr. 41-85. On May 1, 2014, the ALJ found Plaintiff not disabled. Tr. 13-38. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision Tr. 1-5. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920(SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

Page 2 - REPORT & RECOMMENDATION

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(I).  This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit.  20 C.F.R. §§ 404.1510; 416.910.  If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  Unless
      expected to result in death, an impairment is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a); 416.921(a).  This impairment must have lasted
      or must be expected to last for a continuous period of at least 12 months.
      20 C.F.R. §§ 404.1509; 416.909.  If the claimant does not have a severe
      impairment, the analysis ends.  20 C.F.R. §§ 404.1520(a)(4)(ii);
      416.920(a)(4)(ii).  If the claimant has a severe impairment, the analysis
      proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,
      then the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii);
      416.920(a)(4)(iii).  If the impairment does not meet or equal one or more of
      the listed impairments, the analysis proceeds beyond step three.  At that
      point, the ALJ must evaluate medical and other relevant evidence to assess
      and determine the claimant's "residual functional capacity" ("RFC").  This
      is an assessment of work-related activities that the claimant may still
      perform on a regular and continuing basis, despite any limitations imposed
      by his or her impairments.  20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
      416.920(e); 416.945(b)-(c).  After the ALJ determines the claimant's RFC,
      the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled.  20 C.F.R.
      §§404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
      is the claimant able to make an adjustment to other work that exists in
      significant numbers in the national economy?  If so, then the claimant is
      not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
      416.960(c).  If the claimant cannot perform such work, he or she is
      disabled.  *Id.*

Page 3 - REPORT & RECOMMENDATION

*See also Bustamante v. Massanari,* 262. F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since his application on March 27, 2012. Tr. 18. At step two, the ALJ found Plaintiff's methamphetamine and cannabis dependence, and seizure disorder, were severe impairments. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 21.

The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. The claimant should avoid even

Page 4 - REPORT & RECOMMENDATION

moderate exposure to hazards. Tr. 21. In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found him not fully credible. Tr. 22. At step four, the ALJ found Plaintiff had no past relevant work. Tr. 28. At step five, the ALJ found there were jobs in the national economy Plaintiff can perform, including laundry folder, hand packager, and small products assembler. Tr. 29. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through May 1, 2014.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007)(quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted)). The reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray,* 554 F.3d at 1226.

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## ADMINISTRATIVE RECORD

### I. Testimony

Plaintiff, his mother Kathleen Hogan, his attorney, and a Vocational Expert appeared at a hearing before an ALJ on April 4, 2014. Tr. 41-85. Plaintiff testified that he lived with his mother and father, and worked part-time in his mother's furniture company until November 2013. Tr. 44. Plaintiff worked three to four hour days, three to four days a week, opening the store, moving furniture, and keeping the warehouse clean. Tr. 46. He stopped working after hurting his back, resulting in back surgeries in December 2013 and February 2014. Tr. 45. Plaintiff worked when he was needed as backup or when there was a special promotion. Tr. 46. If Plaintiff felt petit mal migraines starting he would stop working and take a ninety minute to two hour nap. If he "didn't shake it" he was sent home. Tr. 47. Plaintiff estimated that he had to stop working to take a petite mal break about 15% of the time he was working. Plaintiff has associate degrees in marketing and business, and he wrote his mother's business plan and helped her arrange the furniture.

Page 6 - REPORT & RECOMMENDATION

Plaintiff testified he had to stay away from the friends of his youth. Tr. 49. He was incarcerated until 2009, and in about 2011 found his friends were not enjoyable. Plaintiff testified that he did not currently spend time with friends. Tr. 50. None of his friends come over and he does not go out. Tr. 51. He checks on an older friend occasionally.

Plaintiff sleeps a lot "because of my petit mal things." Tr. 52. Four days a week he sleeps 18 hours a day. *Id.* When he feels a petit mal seizure starting it is like a "electric combustion. . . right here at the core of my brain. . . . *Id.* "If I don't, if I don't catch - - if I don't get it, then it will get me. Yeah, I know it will get me. I know it will get me. I, I probably couldn't pass more than three ticks before, you know, it gets me." *Id.*

Plaintiff stated:

> . . .if I have a grand mal seizure it's usually because I didn't start having the tick until later in the day and I was already – I'd already you know, made myself something to eat, got dressed, got ready for the day and I was like, you know, I'm not going to let this – I'm, I'm not going to let this kill my day. You know, I, I want some – it's, it's hard to just hand over your day to, you know, to sleep. You know, to sleep your days away, it's, it's hard for me too. I, I want to do something, you know. It's hard to just – so sometimes I push – I try to push through them and every time it gets me. Every time I try to push, try to push through it, it gets me.

Tr. 53.

Plaintiff estimates he has had a dozen grand mal seizures in the past year. He does not always go to the hospital because it is expensive. He thinks he went to the hospital three times in the last year because of seizures.

Plaintiff is on probation. He testified he was last incarcerated in September. "On, no, I'm sorry, because I just had a seizure, so my memory, my memory is rough. Let, let me think here. I

think I just recently went to jail. I just went – I just recently went to jail for a probation violation." Tr. 54. Plaintiff went to jail three days after his second back surgery for a probation violation arising out of a drug deal conducted in Plaintiff's presence. Tr. 54-55.   Plaintiff is on probation for attempting to sell a stolen car, and has previous probation violations for failing to register as a sex offender when he changed residences. Tr. 55-56.

He last used methamphetamine in February, and has used off and on since he was released from prison. Tr. 57. His doctors, including Dr. Ferguson, know about his drug use. *Id.* Plaintiff thinks the meth use does not affect his seizures, and he uses it because it makes him feel young again. Tr. 58. He admits he is an addict. He uses marijuana "not too often," and not usually more than three bong hits. Tr. 60-61. When his drug use "becomes a problem" he deal[s] with it and tries to pull himself "towards the people that are the positive in my life." Tr. 61. Plaintiff does not have anxiety. He last sold drugs in 2011. Tr. 62.

Plaintiff has a business plan to market a mobile service provider. Tr. 63. He is trying to create a prototype for investors.   Plaintiff spends his time on the internet doing research and networking. He does not watch television. Tr. 65-66. Plaintiff had a bruise on his forehead after falling onto concrete during a seizure. Tr. 68. His short term memory is bad.

After leaving prison in 2009 Plaintiff saw his drug using friends sometimes, until about 2011, when he attempted to avoid his old friends in order to stay clean. Tr. 69. Plaintiff has Obsessive Compulsive Disorder (OCD), which causes him to repeat routines in his daily activities., including the way in which he uses his computer. Tr. 70.

## II. Medical Records

The medical records are extensive, and the parties are familiar with them. Therefore they will be set out below when relevant.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly weighing medical evidence; (2) failing to properly evaluate the effect of stress on Plaintiff's ability to work; and (3) failing to consider the side effects of Plaintiff's medications. In addition, Plaintiff contends the Appeals Council improperly failed to consider new and material evidence.

### I. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn,* 495 F.3d at 632. In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject

Page 9 - REPORT & RECOMMENDATION

physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## A. Dr. Ferguson's Opinion

Felicia A. Ferguson, M.D., is a neurologist at Kaiser Permanente, and Plaintiff's treating

neurologist since August 2012. Tr. 968. In December 2012, Dr. Ferguson wrote to the Social

Security Administration on Plaintiff's behalf. Tr. 774. Dr. Ferguson stated:

> Mr. Hogan has had medically refractory seizures since age 15. He
> first presented with generalized tonic clonic seizures. He was having
> myoclonic seizures as well. He was seen by Dr. Norman So, an
> epileptologist, EEG was consistent with idiopathic generalized
> epilepsy. He was started on Depakote. On Depakote, the preferred
> medication for this type of epilepsy, he continued with seizures. Mr.
> Hogan has tried several times to enroll in school and maintain employ-
> ment, but because of frequent generalized seizures despite therapeutic
> doses of Depakote, he has struggled. He has also failed trials of
> Dilantin, Tegretol, levetiracetam and lamotrigine.
>
> Mr. Hogan is medically disabled at this time due to frequent daily
> myoclonic seizures that have been recalcitrant to therapeutic doses
> of anti-epileptic medication. He also has frequent generalized
> seizures. He has some evidence of memory impairment, likely
> multifactorial due to effects of medications, and multiple seizures
> over time. He cannot drive due to seizure disorder. At this time,
> it would be very difficult for him to maintain gainful employment
> due to his medical condition.
>
> Epilepsy syndrome of an idiopathic generalized epilepsy was
> recently confirmed by an EEG here at Kaiser Permanente in August
> 2012.

*Id.*

In April 2014, Dr. Ferguson completed a form prepared by council in which she opined that

Plaintiff must avoid driving, operating heavy machinery, working at night, and working

unsupervised. Tr. 1250. Dr. Ferguson said Plaintiff would require one to two additional work

Page 10 - REPORT & RECOMMENDATION

breaks during an eight hour day of 15 minutes duration, during which Plaintiff would need to lie down, due to myoclonic seizures. Tr. 1251.   Dr. Ferguson said stress increased Plaintiff's seizure activity, and he was incapable of even a low stress job.  Tr. 1252.  Plaintiff's symptoms would interfere with the concentration required to complete simple tasks for one third of the workday or less.  Dr. Ferguson opined that Plaintiff would miss work more than twice a month due to his condition, he was not malingering, and his prognosis was guarded.  Tr. 1253.  Treating physician Samuel A. Hughes, M.D., concurred with Dr. Ferguson's opinion.  Tr. 1254.

## B.  The ALJ's Rejection of Dr. Ferguson

The ALJ noted Dr. Ferguson's December 2012 letter, and said her opinion "is not given great weight because it is not consistent with the longitudinal record that fails to document the frequency of seizures alleged and shows that the claimant typically experienced seizures when he was not medication compliant."  Tr. 26.  The ALJ rejected Dr. Ferguson's 2012 opinion because she did not identify specific functional limitations, and she did not address the degree to which substance abuse affected Plaintiff's seizure disorder.  Tr. 26-27.

Thereafter the ALJ cited Dr. Ferguson's April 2014 opinion.  Tr. 27.  The ALJ said "there is no support for the alleged need to take unscheduled breaks to lie down or the estimated absences. The record fails to contain objective documentation of frequent daily seizures, and shows that the claimant' seizures have been generally well controlled when he is medication compliant, which is often not as evidenced by subtherapeutic drug levels."  *Id.*  The ALJ rejected Dr. Ferguson's opinion as inconsistent with Plaintiff's activities of  computer work and planning road trips related to his planned business.  Finally, the ALJ found Dr. Ferguson's opinion not well supported or consistent with the medical record.

Page 11 - REPORT & RECOMMENDATION

## C. Analysis

Plaintiff apparently concedes that Dr. Ferguson's opinion is contradicted, and argues that the ALJ's assessment is not supported by specific and legitimate reasons.

### (1) The Medical Record Regarding the Frequency of Seizures

The record indicates Plaintiff had at least a dozen grand mal seizures between May 2004 and October 2008. Tr. 602, 604, 600, 599, 598, 576, 591, 576, 575. On one occasion Plaintiff had missed his medication. Tr. 592. In March 2010 Plaintiff was seen in the emergency room after falling during a seizure. Tr. 663. He had a therapeutic level of Depakote in his system. Tr. 666. In April 2010, consulting neurologist Norman Freeman, M.D., noted generalized seizure disorder with sub-optimal control. Tr. 707. Plaintiff reported his medication caused drowsiness. Tr. 711. Dr. Freeman increased Plaintiff's Depakote from 1500 to 1750 mg per day. In June 2010, Plaintiff reported two seizures since April, he had reduced his Depakote to 1500 mg, and had side effects of a flat affect, hand tremors, tachycardia, and anxiety. Tr. 713. Plaintiff had a seizure on October 25, 2010, and was sleepy and "foggy headed" for a number of days. Dr. Freeman noted increased frequency of seizures from about two per year to four this year. Tr. 734. Plaintiff reported seizures were triggered by stress.

By November 2010 Plaintiff reported increasing seizures, with short term memory issues. Tr. 728. Dr. Freeman increased Depakote to 2000 mg per day, but Plaintiff was not able to tolerate that dose. On November 17, Plaintiff reported he had had a seizure that knocked him out for two and a half days and he could not remember anything. He took 1750 mg of Depakote that caused him to be unaware of what he was doing. Tr. 731. If he took his medication throughout the day he was sleepy. Dr. Freeman noted Plaintiff had rapid pressured speech and lost his train of thought. On

Page 12 - REPORT & RECOMMENDATION

November 18, 2010, Dr. Freeman noted "inadequately controlled seizure disorder, but can't increase [Depakote] without intolerable side effects. Will add levetiracetam." Tr. 733. Plaintiff had a grand mal seizure on June 29, 2011. Tr. 822. Dr. Freeman noted Plaintiff was taking 2000 mg of Depakote, with side effects of drowsiness, mental fogginess, and dampening of emotion. *Id.* Dr. Freeman increased the Lamictal stating "his seizure disorder has not been under good control for a long time now." Tr. 823. In November 2011 Dr. Freeman reported Plaintiff had one seizure since August, when he had missed his medication. Tr. 836. Plaintiff was attending Lifeworks programs and not using methamphetamine or marijuana. Tr. 837. His Depakote level was subtherapeutic "but he is still very drowsy." Tr. 838. Higher doses caused intolerable side effects.

Plaintiff saw Dr. Freeman in August 2012. Tr. 787. He reported a grand mal seizure in March 2012, although he had not missed his medications. Tr. 788. Plaintiff reported the Lamictal caused drowsiness, sensitivity to light, and decreased reaction time, and wanted surgery for his seizures. Dr. Freeman referred him to Dr. Ferguson.

Plaintiff saw Dr. Ferguson on August 14, 2012. Tr. 969. Plaintiff described brief, petite mal seizures occurring when he attempted focused mental tasks. The seizures would sometimes fade if he was able to lie down and relax, and sometimes progressed to grand mal seizures. Dr. Ferguson noted breakthrough seizures on therapeutic doses of Depakote. Tr. 970. She ordered a brain MRI and EEG. The EEG showed abnormal awake and asleep results with "very rare frontally dominant generalized appearing spike wave discharges on an otherwise normal EEG background. This finding is seen most often in association with an idiopathic generalized epilepsy, however, a focal frontal epilepsy with secondary bisynchrony cannot be entirely excluded." Tr. 769. On September 10 Plaintiff reported side effects of sedation and slight nausea. Tr. 799. In October Dr. Ferguson

Page 13 - REPORT & RECOMMENDATION

prescribed felbamate and the tapering of lamotrigine.  Tr. 808.  Plaintiff felt better mentally but myoclonic jerks were increasing.  By December 2012, Dr. Ferguson noted Plaintiff was tapering off the Depakote and felt better mentally, but both generalized tonic-clonic seizures and myoclonic jerks were increasing.  Tr. 1006.  Dr. Ferguson said Plaintiff had improved control on Depakote but it caused "intolerable side effects."  *Id.*

In February 2013, Plaintiff had "seizure clusters every week, mostly myoclonic."  Tr. 1011. In April Plaintiff reported a grand mal seizure after missing his evening medication.  Tr. 1024. Plaintiff had two generalized tonic-clonic seizures in June after missing medications.  Tr. 1034.  Dr. Ferguson said Plaintiff "had improved control on Depakote and Felbamate, but still with breakthrough events."  *Id.*  On March 26, 2014, Plaintiff had a grand mal seizure and hit his head on concrete.  Tr. 1233.  He had missed three or four doses of his medications.  Tr. 1236.

On this record, the evidence as to the frequency of Plaintiff's seizures, when medication compliant, is not a specific and legitimate reason to discredit Dr. Ferguson's opinion.

### (2) Failure to Identify Functional Limitations

Dr. Ferguson's failure to identify functional limitations in her December  2012 letter is not a valid reason to reject her opinion.  This is especially true because she did identify functional limitations in April 2014 and the ALJ had access to both opinions.  The failure to identify functional limitations is not a clear, convincing, specific or legitimate reason to reject her opinion.

/ / /

/ / /

/ / /

/ / /

Page 14 - REPORT & RECOMMENDATION

### (3) Failure to Address Substance Abuse

Dr. Freeman specifically noted Plaintiff's substance abuse in August 2012. Tr. 788. Other treating physicians noted intermittent substance abuse. Tr. 786. Dr. Ferguson noted "substance use and abuse in the past." Tr. 970. None of Plaintiff's treating doctors opined that substance abuse caused or contributed to his seizures. Dr. Ferguson's failure to address substance abuse is not a clear, convincing, specific or legitimate reason to reject her opinion.

### (4) Unscheduled Breaks, Estimated Absences, and Daily Activities

The ALJ rejected Dr. Ferguson's opinion, in part, because there "is no support for the alleged need to take unscheduled breaks to lie down or the estimated absences." Tr. 27. Dr. Ferguson's opinion is based on her own observations of Plaintiff. Dr. Ferguson noted weekly seizure clusters, mostly myoclonic. Tr. 1011. Plaintiff's mother, Kathleen Hogan, testified that she witnesses Plaintiff's seizures about once a month, when Plaintiff appears to zone out for a minute. Tr. 77. She does not allow him to drive or use power tools. *Id.*

As to daily activities, Plaintiff spends a great deal of time on the computer and planning road trips that he does not take. This is not inconsistent with frequent petit mal seizures. Because the ALJ failed to identify specific and legitimate reasons to reject Dr. Ferguson's opinion, the Court should find that determination not supported by substantial evidence.

## II. The ALJ Erred by Failing to Consider the Effect of Stress on Plaintiff's Ability to Work.

Plaintiff contends the ALJ erred by failing to consider the effect of stress on his ability to work. Plaintiff notes he reported that seizures can occur when he feels psychologically stressed. Tr. 709. Plaintiff's father completed an Adult Function Report in March 2011, in which he stated that "lots of stress triggers a seizure." Tr. 370. Plaintiff's mother completed a Third Party Seizure

Page 15 - REPORT & RECOMMENDATION

Questionnaire in November 2012, in which she stated that stress caused seizures. Tr. 453. Two treating physicians stated that stress increased seizures. Tr. 1252.

Defendant notes that Plaintiff reported to Thomas J. Smurthwaite, Ph.D., that his history of anxiety was related to his substance abuse, and his anxiety was reduced since he stopped abusing substances. Tr. 829. Although this may be true, it does not mean that stress does not increase the risk of seizure. The ALJ erred by failing to assess the effect of stress on Plaintiff's ability to work.

## III. The ALJ Erred by Failing to Consider the Side Effects of Medications.

Plaintiff has consistently reported drowsiness from his medication. Tr. 386, 422, 713, 799, 789, 812, 822, 838, 854, 878, 902, 910, 1006. In December, 2010, treating neurologist Freeman noted that Plaintiff's seizures were inadequately controlled by medication, and the dosage could not be increased because the side effects were already intolerable. Tr. 736. In November 2011, Dr. Freeman observed Plaintiff was drowsy. Tr. 838. In August 2012, Dr. Freeman reported that Plaintiff was having severe side effects from his medications, including drowsiness and sensitivity to light. In December 2012, treating epileptologist Ferguson said Plaintiff suffered some memory impairment due to seizures and medications. Tr. 774.

The ALJ did not consider Plaintiff's medication side effects. On this record, the ALJ's failure to consider medication side effects is error.

## IV. The Court Does Not Have Jurisdiction to Review the Action of the Appeals Council.

Plaintiff presented new evidence, including a September 2014 surgical report, to the Appeals Council with his request for review. The Council declined to review the ALJ's decision. Tr. 1. In doing so, it noted the newly proffered medical reports related to a "later time" and did not affect the ALJ's disability determination. *Id.* The Council did not incorporate the new records into the

Page 16 - REPORT & RECOMMENDATION

administrative record. Plaintiff argues the Appeals Council erred in failing to consider the new evidence. However, this Court does not have jurisdiction to review the action of the Appeals Council because it was not a final decision by the agency. *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012)("We have held that we do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action."). Accordingly, Plaintiff's challenge is not properly before this Court on appeal.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The Court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory

Page 17 - REPORT & RECOMMENDATION

rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010). See also, *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1100-1101 (th Cir. 2014).

The ALJ erred by rejecting the opinions of the treating physicians. Those physicians opined that Plaintiff would miss more than two days of work each month due to his symptoms. Tr. 1252-53. If credited, their opinions establish that Plaintiff cannot maintain employment because the Vocation al Expert testified that a person who missed more than two days of work each month would not be able to maintain employment. Tr. 83. These opinions establish that Plaintiff is disabled. Thus the Court should conclude Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman,* 211 F.3d at 117.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four, 42 U.S.C. § 405(g) for the calculation and payment of benefits to Plaintiff.

/ / /

/ / /

/ / /

/ / /

This Report and Recommendation will be referred to a district judge. Objections, if any, are

due no later than fourteen (14) days after the date this recommendation is filed. If objections are

filed, any response is due within fourteen (14) days after the date the objections are filed. *See*

FED.R.CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time

may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.

1991).

Dated this ___5___ day of April 2016.

Mark D. Clarke
United States Magistrate Judge

Page 19 - REPORT & RECOMMENDATION